UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY L ALLEN,<br><br>        Plaintiff,<br><br>    v.<br><br>PAUL LANDRY, et al.,<br><br>        Defendants. | Case No. 21-cv-03856-KAW<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REQUIRING SUPPLEMENTAL BRIEFING**<br><br>Re: Dkt. No. 51 |

Plaintiff Ruby L. Allen filed the instant case against Defendants Regents of the University of California ("UC Regents"), Paul Landry, and Jaycee De Guzman, alleging age, disability, and race discrimination. (*See* First Amend. Compl. ("FAC"), Dkt. No. 12.) Pending before the Court is Defendants' motion for summary judgment. (Defs.' Mot. for Summ. J., Dkt. No. 51.)

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the October 19, 2023 hearing, the Court GRANTS IN PART Defendants' motion for summary judgment. The Court further ORDERS the parties to provide supplemental briefing, and DEFERS ruling on the remainder of the motion for summary judgment.

## I. BACKGROUND

In 1989, Plaintiff began her employment with Defendant UC Regents, working at the University of California, San Francisco ("UCSF"). (Allen Decl. ¶ 2, Dkt. No. 68-2; Barrick Decl., Exh. 1 ("Allen Dep.") at 36:19-20.) Plaintiff became an Administrative Assistant III, working at the service request desk in facilities management. (*See* Allen Dep. at 40:6-9, 40:17-20.) In this position, Plaintiff was required to take calls, send out work requests, and dispatch requests to the appropriate person. (Allen Dep. at 40:12-16.)

From around February 2013 to October 2014, Plaintiff took worker's compensation leave

related to a shoulder injury. (Allen Dep. at 95:25-96:3, 101:19-102:1, 197:25-198:5.) Upon her return, her supervisor was Defendant Landry. (Allen Dep. at 102:5-7.) In Plaintiff's 2014-2015 performance evaluation, Defendant Landry stated that Plaintiff met expectations, but noted that while Plaintiff's accuracy in processing work orders was good, her volume of work was "considerably lower than the other dispatchers on the team. Completion about 150 work orders a month compared to 700-800 of other dispatchers." (Allen Dep., Exh. 19 at 3.)

In 2016, Defendant De Guzman became Plaintiff's direct supervisor, while Defendant Landry became Assistant Director of Customer Service and Technology. (De Guzman Decl. ¶¶ 9-10.) In Plaintiff's 2016 evaluation, Defendant De Guzman stated that Plaintiff partially met minimum standards, and that the "volume and quality of work is well below expectations," including "[o]ften fail[ing] to assign the correct cost center and Unit code." (Allen Dep., Exh. 26 at 1.) Defendant De Guzman placed Plaintiff on a performance improvement plan ("PIP") from May to July 2017, which Plaintiff completed. (De Guzman Decl. ¶ 21.) In Plaintiff's 2017 evaluation, Defendant De Guzman stated that Plaintiff met all expectations. (Allen Dep., Exh. 30.) In Plaintiff's 2018 evaluation, Defendant De Guzman again found that Plaintiff met all expectations, but stated that Plaintiff took 37% more time to handle simple queries or process requests. (Allen Dep., Exh. 31.)

Plaintiff asserts that starting around 2018, Plaintiff began to experience harassment based on her age and disability. (Allen Decl. ¶ 2.) Plaintiff asserts that she was called "old" and "Grandma" by her manager, supervisor, and other co-workers, was criticized for being slower than others on her team despite meeting job expectations, was scrutinized in her work differently than younger people were scrutinized, was criticized for her technical expertise when working from home during Covid even though IT technicians agreed she was not at fault for her issues, experienced insinuations that she was incompetent and too old to learn whenever technology was discussed, and was asked when she was "going to leave" or "going to retire" by a manager and supervisor. (Allen Decl. ¶ 4.)

Plaintiff also alleges that due to her disability, she was criticized and threatened with punishment for having doctor appointments, resulting in Plaintiff using her own sick or vacation

2

time to attend to workers' compensation appointments. (Allen Decl. ¶ 5.) In contrast, Plaintiff asserts other co-workers were frequently allowed to work additional hours or to make up absences without having to use personal time, while Plaintiff was told to wait to see how much work would be available. (Allen Decl. ¶ 14.) Defendants contend that while Defendant De Guzman and Landry allowed Plaintiff to arrange her schedule to "make up" time she missed for doctor's appointments by coming in early or staying late, rather than using her vacation or paid sick leave, Plaintiff sometimes failed to give sufficient advance notice of her absences. (De Guzman Decl., Exhs. 17 (Plaintiff's request to work early that day to make up for the prior day's appointment), 20 (De Guzman reminder to give notice of making up time ahead of time for approval), 25 (Plaintiff's 4:00 p.m. request to work until 5:00 p.m. to make up for the prior day's appointment).) Plaintiff also alleges that she was held up for ridicule in front of others on the team because she worked at a slower pace, despite working with a disabled arm. (Allen Decl. ¶ 5.)

Plaintiff further alleges that at an unknown point, she reported these issues to management and asked that they be addressed. (Allen Decl. ¶ 6.) Thereafter, management allowed co-workers to comanage Plaintiff and her work, allowed co-workers and her supervisor's friends to sit in on what were supposed to be one-on-one meetings between Plaintiff and her supervisor, questioned when Plaintiff was going to leave or retire, refused to take her complaint to HR unless Plaintiff "answered her questions first," and sent Plaintiff to labor relations to create a paper file and threaten to have Plaintiff terminated. (Allen Decl. ¶¶ 7-10, 12, 17.) Additionally, a co-worker allegedly locked Plaintiff in a room and told Plaintiff she could not leave until she told her certain information. (Allen Decl. ¶ 13.) Plaintiff also asserts she had to go to a union representative to get her supervisor to stop harassing her about leading the daily huddle. (Allen Decl. ¶ 15.)

In September 2018, Plaintiff e-mailed Jon Giacomi, the then-UCSF Assistant Vice Chancellor, Facilities Services, Campus Life Services, complaining about Defendant Landry. (Allen Dep. at 247:15-25.) Plaintiff asserts the work environment got worse after that. (Allen Dep. at 254:8-11.)

In March 2020, Plaintiff began working remotely due to the Covid pandemic; she came into the office once between March 2020 and August 2021, during which she only spoke to the

3

security guard. (Allen Dep. at 204:20-205:23.) Sometime in 2020, Plaintiff contacted the Office for Prevention of Harassment and Discrimination. (Allen Dep. at 259:8-13.)

On January 18, 2021, Plaintiff was deemed able to work at full capacity. (De Guzman Decl., Exh. 27.) On February 11, 2021, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH"). (Allen Dep. at 193:14-194:10, Exh. 27.) In her charge, Plaintiff asserted that she had been harassed due to her protected class, including being called "Grandma" and asked about her retirement plan. (Allen Dep., Exh. 27 at 1.) Plaintiff stated that when she returned from leave, she was given new tasks that she had not been trained to perform, with changed and increased duties. (*Id.*) She also asserted different treatment on her return, including being told she was slow and old. (*Id.* at 1-2.) When she made written complaints, she was subjected to alienation, acts of violence, demeaning remarks, threats of termination, and negative performance evaluations. (*Id.* at 2.)

On May 21, 2021, Plaintiff filed the instant action. (Compl., Dkt. No. 1.) On July 29, 2021, Plaintiff announced that she was retiring, effective August 2, 2021. (De Guzman Decl., Exh. 31.) In her messages, Plaintiff thanked her team and stated that she would miss everyone. (*Id.*) Plaintiff states, however, that she had originally planned to work until 2029, but that she retired early because she "was no longer able to sustain the impact on my [sic] of what was taking place at work." (Allen Decl. ¶ 3.)

On August 30, 2021, Plaintiff filed the operative complaint, alleging claims of: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA") against Defendant UC Regents; (2) disability discrimination under Title I of the Americans with Disabilities Act ("ADA") against Defendant UC Regents; (3) disability discrimination under the Rehabilitation Act against Defendant UC Regents; (4) retaliation under Title VII against Defendant UC Regents; (5) age discrimination under the Fair Employment and Housing Act ("FEHA") against Defendant UC Regents; (6) retaliation under FEHA against all Defendants; (7) race discrimination under FEHA against Defendant UC Regents; and (8) race discrimination in violation of 42 U.S.C. § 1983 against Defendants Landry and De Guzman. On October 12, 2021, Defendants filed their

answer, raising affirmative defenses under the statute of limitations and the Eleventh Amendment. (Answer at 6, 8, Dkt. No. 22.) With respect to the Eleventh Amendment, Defendants stated: "Plaintiff's claims are barred, in whole or part, pursuant to (state specific Federal Statute, such as, sections 206, 207, and 215, as well as any and other claims brought under the Fair labor Standards Act) fail to state a claim for which relief can be granted against The Regents (and each individual defendant) because these claims are barred by Eleventh Amendment Immunity." (Answer at 8.)

On December 27, 2022, Defendants filed the instant motion for summary judgment. On September 22, 2023, Plaintiff filed her opposition.[1] (Pl.'s Opp'n, Dkt. No. 68.) On September 29, 2023, Defendants filed their reply. (Defs.' Reply, Dkt. No. 69.)

## II.     LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an

---

[1] Following the withdrawal of Plaintiff's counsel, the motion for summary judgment was stayed while Plaintiff was referred to the Pro Bono Project for appointment of counsel. (*See* Dkt. Nos. 60, 61.) After counsel was appointed, a new briefing schedule was set. (Dkt. No. 67.)

essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III.   DISCUSSION

**A.   Evidentiary Objections**

Defendants object to the majority of Plaintiff's declaration, but fail to make any arguments to support those objections. (*See* Defs.' Reply at 6:25-7:2.) This effectively requires the Court to make arguments on Defendants' behalf, which is not proper. Indeed, courts in this district have ignored objections that are not substantiated. *See Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1231 (N.D. Cal. 2018) ("Defendants also object on the basis of hearsay and lack of personal knowledge, but fail to make any arguments to support those objections. The court will therefore ignore the hearsay and personal knowledge objections for purposes of this motion.").

Further, to the extent Defendants object on hearsay grounds, "at the summary judgment stage the Court does not focus on the admissibility of the evidence's form, so long as the contents are capable of presentation in an admissible form at trial." *Jimenez v. Haxton Masonry, Inc.*, No. 18-cv-07109-SVK, 2020 U.S. Dist. LEXIS 99251, at *7 (N.D. Cal. June 5, 2020) (internal quotation omitted). Defendant also objects to paragraphs of Plaintiff's declaration as "lacking foundation" or "speculative" when she is describing her own experiences. It is unclear, for example, how Plaintiff's assertion that she was questioned about when she was going to leave or retire lacks foundation or is speculative. (*See* Allen Decl. ¶ 10.) Accordingly, the Court OVERRULES Defendants' objections to Plaintiff's declaration.

Additionally, Defendants object to the subpoenas issued to Defendants Landry and De Guzman. (Defs.' Reply at 5.) Specifically, on September 22, 2023, Plaintiff served subpoenas on Defendants Landry and De Guzman to appear at the October 19, 2023 summary judgment hearing. (Williams Decl. ¶ 4, Dkt. No. 68-1.) As Defendants correctly point out, Civil Local Rule 7-6 states: "No oral testimony will be received in connection with any motion unless otherwise ordered by the assigned Judge." The Court has not ordered oral testimony, nor has Plaintiff explained why oral testimony will assist in this case. As discussed below, where Plaintiff has failed to demonstrate a question of fact, this is due to a *lack* of evidence presented by Plaintiff. Further, it is unclear how these subpoenas are proper given discovery closed on November 13, 2022, and Plaintiff has not requested that discovery be reopened. Accordingly, the Court SUSTAINS Defendants' objections to the subpoenas issued to Defendants Landry and De Guzman.[2]

### B. Statute of Limitations

As a preliminary matter, the Court must determine what is the statute of limitations for each of Plaintiff's claims. Specifically, Defendants assert that Plaintiff cannot bring claims based

---

[2] On October 18, 2023 at 1:43 p.m., Plaintiff filed objections to Defendants' evidence submitted with the motion for summary judgment. (Dkt. No. 72.) The objections are stricken as improper; Civil Local Rule 7-3 requires that for an opposition, "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Thus, Plaintiff's objections should have been part of the opposition, rather than belatedly filed less than twenty-four hours before the hearing.

7

on events that occurred on or before: (1) December 31, 2019 as to Plaintiff's FEHA claim; (2) April 17, 2020 as to Plaintiff's Title VII, ADA, and ADEA claims; and (3) May 21, 2020 as to Plaintiff's Rehabilitation Act and § 1983 claims. (Defs.' Mot. for Summ. J. at 7-8.) This is because Plaintiff did not file her charge with the DFEH and EEOC until February 11, 2021, and did not file her lawsuit until May 21, 2021. (*Id.*; *see also* Cal. Gov't Code § 12960 (January 1, 2020 amendment extending time to file an administrative charge with DFEH from one to three years for FEHA claims, but stating that claims that had already lapsed were not revived); 42 U.S.C. § 2000e-5(e)(1) (charge must be filed within 300 days of the challenged action for Title VII claims); *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.12 (9th Cir. 2001) (charge must be filed within 300 days of the challenged action for ADA Title I claims); 29 U.S.C. § 626(d) (charge must be filed within 300 days of the challenged action for ADEA claims); *Douglas*, 271 F.3d at 823 (statute of limitations for Rehabilitation Act claims is one year); *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (statute of limitations for § 1983 claims is one year).

"Plaintiff concedes that the applicable statute of limitations apply to her claims." (Pl.'s Opp'n at 6.) At the same time, however, Plaintiff argues -- without authority -- that which claims are within the statute of limitations is not a summary judgment issue. (*Id.* at 5.) Rather, Plaintiffs contend that conduct outside of the statute of limitations may still be relevant to conduct within the statute of limitations, such that the Court should not be deciding now which conduct is at issue. (*Id.* at 5-6.)

Courts regularly decide statute of limitations issues at the summary judgment stage. *See Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1147, 1150 (9th Cir. 2020) (upholding district court's grant of summary judgment based on statute of limitations). Further, the Court disagrees that it cannot determine what actions fall within the statute of limitations. While it is true that evidence of actions outside the statute of limitations may ultimately be admissible, this does not mean that actions outside the statute of limitations can support liability if they are not, for example, connected to an action within the statute of limitations. Plaintiff cites no legal authority to the contrary.

Thus, the Court finds that the applicable statute of limitations are as follows: **December 31, 2019** as to Plaintiff's FEHA claim; **April 17, 2020** as to Plaintiff's Title VII, ADA, and ADEA claims; and **May 21, 2020** as to Plaintiff's Rehabilitation Act and § 1983 claims.

### C.  Claim 1: Age Discrimination (ADEA)

Plaintiff's first claim is for age discrimination against Defendant UC Regents under the ADEA. Defendants seek summary judgment on the grounds that it is barred by the Eleventh Amendment. (Defs.' Mot. for Summ. J. at 8.)

Plaintiff does not dispute that the Supreme Court has found that "[t]he ADEA's purported abrogation of the States' sovereign immunity is . . . invalid." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Rather, Plaintiff argues that Defendant UC Regents waived the Eleventh Amendment immunity by litigating, pointing to *Katz v. Regents of the University of California*, 229 F.3d 831 (9th Cir. 2000). (Pl.'s Opp'n at 7.) *Katz*, however, is readily distinguishable. There, the Ninth Circuit found waiver because "the state ha[d] *expressly disavowed* Eleventh Amendment immunity as a defense," specifically by submitting a declaration from the general counsel waiving Eleventh Amendment immunity for purposes of that litigation. 229 F.3d at 834-35 (emphasis added). Here, there is no express waiver of the Eleventh Amendment immunity. Instead, Defendants specifically *raised* Eleventh Amendment immunity as an affirmative defense. (Answer at 8.) It is true, as Plaintiff points out, that Defendants' answer is not a model of clarity, including what appears to be placeholder language that was not updated to list the specific claims at issue in this case. (Pl.'s Opp'n at 7; Answer at 8.) At the same time, it cannot be disputed that Defendants' answer put Plaintiff on notice that Defendant was relying on Eleventh Amendment immunity. Plaintiff could have filed a motion to strike the answer, or to propound discovery requesting clarification. Plaintiff did not, and cannot now rely on her inaction to argue that Defendants' pleading was so unclear as to constitute waiver.

In any case, "Eleventh Amendment immunity cannot be constructively waived." *Hibbs v. HDM Dep't of Human. Res.*, 273 F.3d 844, 851 (9th Cir. 2001). Rather, waiver can only be found "where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651,

9

673 (1974). Plaintiff points to no such text, whether express or overwhelmingly implied. Indeed, at the hearing, Plaintiff essentially conceded that Defendant UC Regents did not waive Eleventh Amendment immunity. Accordingly, the Court finds that Eleventh Amendment immunity applies, and that Defendant UC Regents is entitled to summary judgment on the ADEA claim.

### D. Claim 2: Disability Discrimination (ADA Title I)

Plaintiff's second claim is for disability discrimination under Title I of the ADA against Defendant UC Regents. Again, Defendants seek summary judgment based on Eleventh Amendment immunity. (Defs.' Mot. for Summ. J. at 15.)

As above, Plaintiff does not dispute that suits to recover money damages under Title I of the ADA are barred by the Eleventh Amendment. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 360 (2001). Rather, Plaintiff again asserts waiver. (Pl.'s Opp'n at 9.) For the same reasons, the Court finds that Defendant UC Regents did not waive Eleventh Amendment immunity, and that Defendant UC Regents is therefore entitled to summary judgment on the ADA claim.

### E. Claims 3 (Disability Discrimination under Rehabilitation Act), 4 (Retaliation under Title VII), 5 (Age Discrimination under FEHA)

Plaintiff's third claim is for disability discrimination under the Rehabilitation Act against Defendant UC Regents. As noted above, the statute of limitations bars claims based solely on actions that occurred before May 21, 2020. Plaintiff's fourth claim is for retaliation under Title VII against Defendant UC Regents. The statute of limitations bars claims based solely on actions that occurred before April 17, 2020. Finally, Plaintiff's fifth claim is for age discrimination under FEHA against Defendant UC Regents. At the hearing, Plaintiff clarified that this is not limited to a constructive discharge claim, but includes a hostile work environment claim.[3] Additionally, Plaintiff acknowledged that the constructive discharge claim was not exhausted, which effectively leaves only the hostile work environment claim. The statute of limitations bars claims based

---

[3] While Defendants argued at the hearing that Plaintiff did not adequately allege a hostile work environment claim, the operative complaint specifically focuses on harassment, and repeatedly refers to a hostile work environment. (*See* FAC ¶¶ 44 (complaining of harassment based on comments about her age), 45 (alleging that Defendants failed to take action "to remedy the hostile environment"), 46 (alleging that "[t]he harassment was sufficiently severe and pervasive to alter the conditions of Ms. Allen's employment and create a hostile work environment").)

10

solely on actions that occurred prior to December 31, 2019.

At the hearing, the Court raised concerns regarding Plaintiff's declaration regarding its general lack of dates as to when the alleged complained of actions occurred. While the Court focused on Plaintiff's retaliation claim and the lack of information as to when she made her complaints and when the alleged retaliatory acts occurred, this lack of temporal information pertains to Plaintiff's declaration generally. Plaintiff's counsel acknowledged the lack of any specific dates, and requested the opportunity to provide a supplemental declaration to provide such information. Plaintiff's counsel also stated that he had apparently not been provided with all of the prior case materials, including Plaintiff's deposition transcript.

Given the procedural history of this case, including the withdrawal of Plaintiff's original counsel due to circumstances outside Plaintiff's control, the subsequent appointment of pro bono counsel, and counsel's representation that he did not have all of the prior case materials, the Court will allow Plaintiff to provide a supplemental declaration. The supplemental declaration must include the relevant dates; Plaintiff should be mindful of consistency with her deposition testimony[4] and the statute of limitations applicable to each claim. Plaintiff shall provide the supplemental declaration within **two weeks** of the date of this order. Defendants may provide a response within **one week** of Plaintiff's supplemental declaration. Plaintiff's supplemental declaration and Defendants' response shall be no more than ten pages each. In the meantime, the Court will defer ruling on these claims.

### F. Claim 6: Retaliation (FEHA)

Plaintiff's sixth claim is for retaliation under FEHA against all Defendants. Again, the statute of limitation bars claims based solely on actions taken prior to December 31, 2019.

#### i. Individual Defendants

Plaintiff acknowledges that she cannot bring a retaliation claim under FEHA against Defendants Landry and De Guzman. (Pl.'s Opp'n at 11.) Accordingly, Defendants Landry and

---

[4] Defendants' counsel stated that it would provide Plaintiff's deposition transcript if requested. To ensure a full and complete record before the Court rules on these claims, the Court would ask that Defendants' counsel promptly provide Plaintiff's deposition transcript to Plaintiff's counsel.

11

1  De Guzman are entitled to summary judgment on this claim.

       **ii.    Defendant UC Regents**

As above, the Court will defer ruling on this claim until after it has reviewed Plaintiff's supplemental declaration and Defendants' response.

### G.    Claims 7 and 8: Race Discrimination (FEHA and § 1983)

Plaintiff's seventh claim is for race discrimination under FEHA against Defendant UC Regents, while her eighth claim is for race discrimination under § 1983 against Defendants Landry and De Guzman. In her opposition, Plaintiff withdraws her race discrimination claims, and thus the issue is moot for summary judgment purposes. (Pl.'s Opp'n at 11.) At the hearing, Defendants agreed that the claims could be withdrawn, so long as the order made clear that individual Defendants are no longer parties to this action.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Defendants' motion for summary judgment. The Court GRANTS Defendants' motion for summary judgment on Plaintiff's first and second claims, as well as the sixth claim as to Defendants Landry and De Guzman. The Court finds that Plaintiff has withdrawn the seventh and eighth claims, and thus the issue is moot. No pending claims remain against Defendants Landry and De Guzman.

The Court DEFERS ruling on Plaintiff's third, fourth, and fifth claims, as well as the sixth claim as to Defendant UC Regents. Plaintiff shall provide a supplemental declaration within **two weeks** of the date of this order. Defendant UC Regents shall provide a response within **one week** of Plaintiff's supplemental declaration. Once received, the Court will issue a second order resolving these remaining claims.

IT IS SO ORDERED.

Dated: November 6, 2023

_____
KANDIS A. WESTMORE
United States Magistrate Judge